**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**GLEN D. BEDASIE,**

    **Plaintiff,**

**v.**                                                                    **Case No. 8:08-cv-1737-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                                 /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was fifty-two years of age at the time of his administrative hearing in April 2006. He stands 5', 6" tall and weighed 152 pounds. Plaintiff has an associate's degree in human services. His past relevant work was as a machine operator/wire cutter, clerk, sales person, lot attendant, loader, stocker, cashier, and factory worker. Plaintiff applied for disability benefits and Supplemental Security Income payments in October 2002, alleging disability as of February 2, 2001, by reason of pain in his neck, back, arms and legs; difficulty

breathing; and depression. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he is unable to work due to severe pain in his legs, problems with his shoulder, and shortness of breath. He acknowledged that he attempted a few jobs in 2005, and he was working part-time at a laundry at the time of the hearing. He tried to work as much as he could because he needed to, but it ranged from one to four days a week and, by his testimony, he was permitted to sit and rest as needed at that job.

Plaintiff testified that he has difficulty lifting because of problems in his shoulder, and he has severe pain in his legs and feet, especially his left foot. By his account, this is due to intermittent claudication. He suffered a heart attack in February 2001, was in a coma for a time thereafter, and then underwent six months of therapy. Subsequent to this, he had three surgeries to implant stents in his legs, yet he continues to experience intense pain in both legs, his left leg in particular. Breathing is also difficult for him.

Plaintiff estimated that he cannot stand for more than fifteen to twenty minutes before he has to sit down due to pain in his legs. He can walk for five minutes but then must stop because of intense pressure in his feet. On days when he is not working, he tries to walk up to a mile a day. He can sit for thirty minutes or more but then has to stand up and stretch his feet. Bending over to pick something up causes pain in his feet. He described the pain in his left leg as "awful" and it extends up his whole side. Occasionally, his calves will

2

"explode." As for lifting, he has problems with his shoulder and asthma. While he can lift twenty to twenty-five pounds, he cannot carry it for any length of time before he has pain and shortness of breath. Bending and cleaning for more than a few minutes also causes shortness of breath. In the 2002-2003 period, his daughter helped with household chores and shopping, although he could do some chores and cook.

On a typical day, he wakes and tries to walk to a tree near his house where he does some exercises. If he is working, he goes to work and attempts to work a full eight-hour shift. He uses medication for his asthma; sometimes his medication make him dizzy. Plaintiff indicated he uses nitroglycerin as needed for his heart condition. He takes a bus to and from work, and he is very tired when he returns home. He will have a meal, watch some television, and then retire. Plaintiff takes medication to help him sleep, but nonetheless wakes up "exhausted." (R. 568-93).

Next, the ALJ took testimony from Dr. Tennyson Wright, a vocational expert ("VE"). The VE first classified Plaintiff's former work as ranging from sedentary to heavy exertional work.[1] On an assumption of a person of Plaintiff's age, education, and work experience, capable of performing light exertional work with a sit/stand option requiring clean air, no hazards, no temperature extremes, no climbing, and only unskilled and low stress work, primarily working with things rather than people, the VE opined that such individual could perform the jobs of a cafeteria attendant or small parts assembler. On a second hypothetical assuming an individual with leg pain as described by Plaintiff affecting his

---

[1]On instructions from the ALJ, the VE was directed not to consider Plaintiff's work in 2005 or 2006.

concentration and pace up to two-thirds of the time, the VE opined that these jobs would be precluded. On questioning by Plaintiff's counsel, the VE testified that Plaintiff had no transferable skills to sedentary work. (R. 593-98).

At the conclusion of the hearing, counsel suggested to the ALJ that Plaintiff's heart condition might meet or equal a listing, and he suggested that forms had been sent to Plaintiff's cardiologist. The record was left open ten days for the filing of the doctor's response.[2] (R. 598-600).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Significant to the decision is Plaintiff's date last insured for disability benefits, June 30, 2002.

By his decision of July 28, 2006, the ALJ determined that while Plaintiff has severe impairments related to coronary artery disease, chronic obstructive pulmonary disease ("COPD"), depression, hypertension, osteoarthritis of the shoulder, and peripheral vascular disease, he nonetheless had the residual functional capacity to perform a restricted range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-24). The Appeals Council denied Plaintiff's request for review.

---

[2] It is apparent from the hearing transcript that all involved assumed there was no claim for SSI. According to the record and the decision, there were applications for both DIB and SSI.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

1) The Appeals Council failed to consider all the evidence;

2) The weight of the evidence does not support the ALJ's finding that Plaintiff was capable of performing light work; and

3) The ALJ failed to find the consultative examination credible.

By his first claim, Plaintiff urges that the Appeals Council failed to consider the entire record in the case because the listing opinions of his treating cardiologist, Dr. Benedict Maniscalco, were not before it. In support, he states that the exhibit was originally submitted

6

to the ALJ on May 4, 2006, but was not included in the record.[3] Plaintiff's counsel notified the Commissioner's counsel of the missing exhibit in January 2009, and the Appeals Council requested copies in February and March 2009. He argues that since the Appeals Council's opinion did not include the doctor's opinions, it is not supported by substantial evidence. At a minimum, because the doctor was the treating physician, Plaintiff urges that the matter must be revisited by the Appeals Council. (Doc. 22 at 11).

In response, the Commissioner urges that merely because the exhibit was not included in the administrative transcript does not establish that it was not considered by the Appeals Council. It notes that the ALJ expressly considered the listings at issue and determined that Plaintiff did not meet each of the criteria for the listings. Further, Plaintiff fails to demonstrate specific evidence which satisfy the requirements for each of these listings and thus cannot prevail on this argument. (Doc. 25 at 5-8).

While it is entirely unclear that this exhibit was before the Appeals Council at the time it denied review,[4] and clearly it should have been, in the end I am obliged to agree with the Commissioner that there is no substantial harm because the listings claim was presented to both the ALJ and the Appeals Council and because Plaintiff cannot demonstrate that he met or equaled any of the cited listings. As the decision reflects, the forms from Dr. Maniscalco were before the ALJ and considered by him. (R. 19). In his appeal brief to the Appeals

---

[3]Plaintiff asserts that the exhibit reflects this doctor's assessment that Plaintiff's cardiac impairment met the criteria for listings 4.04, 4.08, and 4.12.

[4]Although submitted by the Plaintiff in May 2006, the exhibit was not included in the administrative record until on or about March 5, 2009. *See* (R. 601-06).

7

Council, the findings reflected in these forms were expressly addressed by Plaintiff's counsel (R. 591) and, according to the record, considered by the Appeals Council. (R. 4, 7). Significantly, while the Plaintiff can identify underlying impairments related to his heart, he fails to demonstrate that he met or equaled each of the other criteria to satisfy the listings.

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. Where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224. Here, Plaintiff has failed to offer such proof either by way of Dr. Maniscalco's forms or on this appeal. Nor does he demonstrate that the ALJ's reasons for rejecting the listing claim are

8

incorrect or unsupported by the record before the ALJ. Plaintiff is not entitled to relief on this claim.

Plaintiff's last two claims are related and addressed together. In essence, these claims challenge the ALJ's determination that Plaintiff retained the functional capacity to perform a limited range of light work and the weight the ALJ accorded certain medical opinions that spoke to Plaintiff's functional capacity.

By his second claim, Plaintiff urges that he is unable to perform the duties of light exertional work due to severe occlusive disease in his legs, which prevents him from doing the necessary walking required for light work. He cites the records from Dr. Thomas Kerr and Dr. Maniscalco, both of which support that he has a severe limitation in walking due to his legs. Additionally, he cites to records from the Florida Department of Education, Division of Vocational Rehabilitation, which reflect an assessment for a limited ability to stand, walk, and push and pull. Plaintiff further cites to the consultative examination by Dr. Patrick Ijewere, who noted numerous limitations affecting Plaintiff's capacity to perform work. In sum, Plaintiff urges that all of these doctors have found Plaintiff incapable of performing light work. In further support of this claim, Plaintiff notes that total disability has been suggested, and he has been unable to receive clearance from his cardiologist to return to work. (Doc. 22 at 12-14). By his third claim, Plaintiff argues that the ALJ erred by rejecting the opinions of Dr. Ijewere, a consulting examiner. By this argument, Plaintiff contends that Dr. Ijewere provided evidence not otherwise contained in his file and the doctor's findings were consistent with the findings of Plaintiff's treating physician and, therefore, the ALJ should have accorded greater weight to Dr. Ijewere's opinion. Additionally, Plaintiff urges that, to

the extent that the ALJ thought that the tests conducted by Dr. Ijewere were inadequate, he should have recontacted Dr. Ijewere regarding the perceived deficiencies or ordered another consultative evaluation. *Id.* at 15.

In response, the Commissioner urges that the ALJ correctly assessed Plaintiff's functional capacity for a restricted range of light work and the assessment is supported by substantial evidence. The Commissioner further urges that the ALJ gave adequate reasons for rejecting the opinions of Drs. Paul Nodal, Than Myint, and Patrick Ijewere, as well as the Division of Vocational Rehabilitation, who all found Plaintiff incapable of light exertional work. By the ALJ's assessment, those opinions were inconsistent with the medical findings and Plaintiff's own testimony of his abilities. As for the opinion of Dr. Ijewere, the Commissioner urges that no additional evidence or inquiry was necessary on the part of the ALJ as the record was more than adequate to allow for an informed decision. (Doc. 25 at 8-12).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. To this end, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[5] *Phillips v. Barnhart*, 357 F.3d

---

[5]Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible

1232, 1240 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440; *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As for the opinions of non-treating doctors, i.e., doctors performing consultative examinations and doctors reviewing the medical record, the ALJ must state with particularity the weight accorded those opinions and the reasons therefore, and failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Insofar as Plaintiff seeks disability benefits and the claim is limited by a date last insured of June 30, 2002, the argument here is without merit. As the ALJ noted, Dr. Maniscalco indicated in May 2002 that Plaintiff was able to work and that he would actually benefit from getting a job. (R. 474, 476). Nothing from Dr. Kerr, who treated Plaintiff after his date last insured, necessarily alters this conclusion. The doctor confirmed the severe occlusive disease in both legs, but nothing in his records supports the condition was disabling at that time. *See* (R. 411-23). As for the August 2002 vocational rehabilitation report, while it suggests a number of limitations, it is unclear who signed the report and it is not entitled to significant weight insofar as it was inconsistent with the treating doctor's opinion.

However, the issue on Plaintiff's claim for SSI is much closer in light of the later medical records. As Plaintiff points out, by September 2005, Dr. Maniscalco was recommending that Plaintiff seek disability. (R. 432). In that same report, the doctor noted

---

error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

11

that Plaintiff had recently taken a physical for employment and was turned down because of his cardiac disease. That report by Medero Medical indicated that Plaintiff could not receive work clearance because he needed evaluation and treatment for a bilateral hernia and cardiac disease. Absent a clearance from Plaintiff's cardiologist, which Dr. Maniscalco declined to give, Plaintiff failed the exam. *See* (R. 424). Thereafter, in February 2006, two consultative examiners, Dr. Nodal and Dr. Ijewere, found limitations in lifting, carrying, and standing that would prevent Plaintiff from performing light exertional work. *See* (R. 516-25, 526-37). The ALJ discounted their opinions on the bases that each examined Plaintiff on only one occasion, their findings on physical examination were internally inconsistent, and because their findings were inconsistent with Dr. Maniscalco's opinion. (R. 19).

While I fully recognize that it is the ALJ's responsibility to evaluate the medical evidence and not that of a reviewing court, I find that the ALJ failed to fully consider the reports from Dr. Maniscalco and instead chose to highlight only those opinions supportive of the conclusion he sought to reach. This was error. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence). I cannot accept that Dr. Maniscalco's 2002 statement reflects on, or contradicts, his later opinion in 2005, which obviously had changed. Further, I find the reasons the ALJ provided for discounting the opinions of the consultative examiners are also unpersuasive and, more importantly, unsupported by substantial evidence. Thus, I conclude that the decision, insofar as it relates to the Plaintiff's claim for SSI, is contrary to the substantial evidence, and the case should be

remanded for further consideration of the pertinent medical opinions of record and Plaintiff's functional capacity for sedentary (or less) exertional work.[6]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 17th day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[6] While not raised by Plaintiff, it is worth noting that while the ALJ accorded "great weight" to the opinions of the nonexamining, reviewing doctors (R. 20), he did not credit (or explain why he rejected) their opinions that Plaintiff's ability to reach with his right arm and hand was limited. Nor was the restriction included in a hypothetical to the VE.